```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF TEXAS
                          HOUSTON DIVISION
```

ALESIA G. STEVENSON,           §
                               §
        Plaintiff,             §
                               §
v.                             §       CIVIL NO. H-05-2656
                               §
FORT BEND COUNTY,              §
                               §
        Defendant.             §

**<u>MEMORANDUM OPINION</u>**

Pending before the court[1] is Defendant's Motion for Summary Judgment (Docket Entry No. 24), Defendant's Motion to Strike Plaintiff's Designated Expert Witnesses (Docket Entry No. 29), and Defendant's Motion in Limine (Docket Entry No. 30). The court has considered the motions, all relevant filings, and the applicable law. For the reasons set forth below, the court **GRANTS** Defendant's summary judgment motion. Defendant's other two motions[2] are rendered **MOOT** by this ruling.

## I. Case Background

Plaintiff, an African-American woman, filed this action against her former employer for discrimination and retaliation under the Civil Right Act of 1964 ("Title VII")[3] as well as for intentional infliction of emotional distress under state law.

---

[1] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Docket Entry No. 14.

[2] Plaintiff filed no response to either of these motions, thereby representing that she is unopposed to them. <u>See</u> Local Rule 7.4.

[3] 42 U.S.C. § 2000e-2000e-17.

**A.   Factual History**

Plaintiff began working for Defendant on November 29, 1999, as a Juvenile Probation Officer in Defendant's Field Unit.[4] Plaintiff worked under a number of supervisors before William Brad Slater ("Slater") attained the permanent position as her supervisor.[5] Slater testified that, at first, he and Plaintiff worked well together.[6] Similarly, Plaintiff testified that she initially thought Slater was a good supervisor.[7]

Plaintiff testified about a couple of incidents that lead to the decline of her relationship with Slater.[8] Plaintiff testified that Slater was "short" with her at staff meetings, and that he did not seem to be "short" with other people.[9] According to Plaintiff, another confrontation occurred when she asked Slater a question and he was looking away from her while she was talking to him.[10] She complained that he did not seem to be listening to her and asked,

---

[4]   See Plaintiff's Original Complaint, Docket Entry No. 1, p. 2 (unnumbered).

[5]   Plaintiff's Response, Docket Entry No. 27, Ex. C, Plaintiff's Deposition, pp. 26-27.

[6]   Defendant's Motion for Summary Judgment, Docket Entry 24, Ex. D, Affidavit of William Slater, p. 1.

[7]   Plaintiff's Response, Docket Entry No. 27, Ex. C, Plaintiff's Deposition, p. 27.

[8]   Id. at pp. 30-32.

[9]   Id. at p. 30.

[10]   Id. at p. 31.

"[D]o you always do that?"[11]  Later, Slater confronted Plaintiff and "proceeded to tell [her] about all of the things that [she] had done wrong and what [she] should be doing."[12]

In December 2000 and 2001, Slater completed Performance Appraisals for Plaintiff, rating her performance in the "Exceptional" category.[13]  Despite a high rating, the 2001 Performance Appraisal included a Performance Improvement Plan ("PIP"), which required that Plaintiff become more receptive toward directives and less focused on the actions of co-workers.[14]

In January 2003, Plaintiff complained to Marc Gulnac about an incident where Slater had called her into his office to go over her 2002 appraisal with him.[15]  She recalled that she had looked at the appraisal and had asked some questions.[16]  Plaintiff testified that, when she questioned the appraisal, Slater became upset with her and suggested that he get a witness to sit in on the evaluation.[17] Plaintiff told him, "[N]o you don't.  If you are going to get a

---

[11]   Id.

[12]   Id.

[13]   Defendant's Motion for Summary Judgment, Docket Entry No. 24, Ex. B, Plaintiff's 2000 Performance Appraisal, p. 1; Ex. C, Plaintiff's 2001 Performance Appraisal, p. 1.

[14]   Id. at Ex. C, Plaintiff's 2001 Performance Appraisal, p. 4.

[15]   Plaintiff's Response, Docket Entry No. 27, Ex. C, Plaintiff's Deposition, p. 31.

[16]   Id.

[17]   Id. at pp. 31-32.

witness, I'll need a witness, too."[18]  Slater asked, "[Y]ou don't trust me?"[19]  To which Plaintiff responded, "[N]o, I don't."[20]

In the Performance Appraisal at issue, Slater gave Plaintiff a rating of "Fulfills Expectations."[21]  In the section of the appraisal that set standards for the next appraisal period, Slater wrote:  "[Plaintiff] will become more positive toward directives and new procedures implemented.  She will also offer positive ideas or solutions to assist with department growth."[22]  Slater set goals for Plaintiff in terms of her responsibilities and training.[23] Plaintiff also received a PIP directed at improving her written communication, decision-making skills, and cooperation with others.[24]  The PIP instructed Plaintiff to review her reports thoroughly before she submitted them to a supervisor, to analyze various factors when confronted with a problem, to develop her own solution or decision, and to offer positive ideas for departmental improvement.[25]

---

[18]    Id. at p. 32.

[19]    Id.

[20]    Id.

[21]    Defendant's Motion for Summary Judgment, Docket Entry 24, Exhibit Q, Plaintiff's 2003 Performance Appraisal, p. 5.

[22]    Id. at p. 6.

[23]    Id.

[24]    Id. at p. 7.

[25]    Id.

4

In July 2003, Plaintiff received another performance appraisal and PIP that she deemed to be unfavorable.[26] Plaintiff refused to sign the evaluation and requested that the rating be changed.[27] A human resources representative met with Plaintiff and Slater.[28] When Slater refused to change the rating, Plaintiff filed a grievance with the Fort Bend County's Juvenile Board ("Board") contesting the July 2003 appraisal.[29] The Board ordered the chief juvenile probation officer, Michael Meade ("Meade"), to mediate the dispute between Plaintiff and Slater.[30] Plaintiff and Slater attended several mediation sessions, after which Plaintiff formally withdrew her grievance.[31] However, Plaintiff would not agree to sign the mediation agreement until a statement was added that left the door open for her to transfer if "things didn't work out."[32]

Although the grievance was resolved, Plaintiff claimed to have experienced some backlash from coworkers who were upset with her for complaining to the Board.[33] Plaintiff felt that her co-workers

---

[26] See Defendant's Motion for Summary Judgment, Docket Entry No. 24, Ex. S, Affidavit of Michael F. Meade, p. 1. This evaluation is not in the summary judgment record.

[27] Id.

[28] Id.

[29] Id.

[30] Id.

[31] Id.

[32] Id. at Ex. I, Plaintiff's Deposition, pp. 141-42.

[33] See id. at Ex. X, Plaintiff's Deposition, p. 198.

ignored her and were unkind to her because they believed she had spoken about them to the Board.[34]

Plaintiff's complaints about Slater's criticisms of her performance continued.[35] Meade decided to create a new position for her in the Psychology Unit.[36] Meade tentatively set Plaintiff's transfer date for February 2, 2004, which allowed time for Meade to present the new position to the Board for approval and for Plaintiff to transfer her caseload to another officer.[37]

On January 15, 2004, Plaintiff asked to meet with Meade.[38] At the meeting, Plaintiff complained that she could no longer work under her supervisor and asked to be transferred immediately to the Psychology Unit.[39] Meade informed Plaintiff that he could not transfer her immediately because the Board had not yet approved the additional position in the Psychology Unit, but offered Plaintiff an available position in the Court Unit instead.[40] Plaintiff testified that she replied, "I don't have a problem going in the court section, but remember some of those people are upset with

---

[34] Id.

[35] Id. at Ex. S, Affidavit of Michael F. Meade, p. 2.

[36] Id.

[37] Id.

[38] Id.

[39] Id.; see also id. at Ex. M, Plaintiff's Deposition, pp. 155-56.

[40] Id. at Ex. S, Affidavit of Michael F. Meade, p. 2; see also id. at Ex. M, Plaintiff's Deposition, pp. 155-56.

6

me."[41]  Plaintiff testified that she would have preferred to transfer to the Psychology Unit.[42]  On January 16, 2004, Plaintiff accepted the position in the Court Unit and transferred to that department.[43]  Neither her job title nor her salary changed as a result of her transfer.[44]

According to Meade, Plaintiff's move to the Court Unit resolved the problem with Slater, but, after a short time in the new unit, Plaintiff began to have trouble with her new supervisor and coworkers.[45]  In anticipation of a state audit, Defendant conducted an internal audit in July 2004.[46]  Plaintiff's poor audit scores resulted in the initiation of a PIP in connection with her 2004 performance appraisal.[47]  On December 10, Defendant provided Plaintiff with her evaluation and placed her on a PIP.[48]  Several days later, Plaintiff took leave under the Family Medical Leave Act

---

[41]   Id. at Ex. M, Plaintiff's Deposition, p. 156.

[42]   Id.

[43]   See id. at Ex. N, Plaintiff's Deposition, p. 162; Ex. S, Affidavit of Michael F. Meade.

[44]   See id. at Ex. AA, Affidavit of Debra Myers; Defendant's Reply, Docket Entry 28, Ex. A, Affidavit of Michael F. Meade.

[45]   See Defendant's Motion for Summary Judgment, Docket Entry 24, Ex. S, Affidavit of Michael F. Meade, p. 2.

[46]   Id.

[47]   Id.  The 2004 performance appraisal and PIP are not in the summary judgment record.

[48]   Id.

("FMLA").[49] When she returned from her FMLA leave in February 2005, Plaintiff resigned.[50]

**B.  <u>Procedural History</u>**

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 3, 2005, alleging that from July 1, 2003, to February 18, 2005, Defendant discriminated against her on the basis of her race and retaliated against her for opposing unlawful employment practices.[51] Specifically, Plaintiff alleged:

> During my assignment as a Field and Court Officer, I was subjected to different terms, conditions, and privileges of employment, by being required to stay late, by being denied a coworkers [sic] to ride with me with clients, required to accomplish extra assignments, supervisor retaining unauthorized documentation regarding my performance, not allowed to present in court, etc.[52]

She also complained that her 2004 performance appraisal, which was due to be completed on her anniversary date (November 29), was not completed until December 20.[53]

The EEOC dismissed Plaintiff's charge for the reason that Plaintiff's facts failed to state a claim under any of the statutes

---

[49]   <u>Id.</u>

[50]   <u>Id.</u>

[51]   <u>See</u> Plaintiff's Original Complaint, Docket Entry No. 1, Ex. A, Charge of Discrimination.

[52]   <u>Id.</u>

[53]   <u>Id.</u>  This date conflicts with summary judgment evidence reflecting that her performance appraisal was completed and presented to her on December 10, 2004.  The inconsistency is insignificant.

enforced by the EEOC.[54] Plaintiff filed a complaint with this court on August 2, 2005, alleging that Defendant violated the anti-discrimination and anti-retaliation provisions of Title VII of the Civil Rights Act of 1964.[55] According to Plaintiff, Defendant's adverse and discriminatory actions constituted constructive discharge.[56] Plaintiff also alleges that Defendant's conduct amounted to intentional infliction of emotional distress.[57]

Defendant filed the pending motion for summary judgment on May 5, 2006.

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir. 2003). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of

---

[54]  Id. at Ex. B, Dismissal and Notice of Rights.

[55]  See Plaintiff's Original Complaint, Docket Entry No. 1.

[56]  See id. at p. 3.

[57]  See id. at p. 4.

either party. Id. at 250.

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992). If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment. Celotex Corp., 477 U.S. at 322. In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist that must be resolved at trial. Id. at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." Evans v. City of Houston, 246 F.3d 344, 348 (5th Cir. 2001); see also Boston Old Colony Ins. Co. v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002). The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

However, the nonmoving party must show more than "some

metaphysical doubt as to the material facts."  Meinecke v. H & R Block of Houston, 66 F.3d 77, 81 (5th Cir. 1995).  Conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, or only a scintilla of evidence will not carry this burden.  Brown, 337 F.3d at 541; Ramsey v. Henderson, 286 F.3d 264, 269 (5th Cir. 2002).  The court must grant summary judgment if, after an adequate period of discovery, the nonmovant fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.  It is not incumbent on the court to search the record for triable issues.  Ragas v. Tenn. Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998).  The duty to identify evidence and its connection to the issues raised falls squarely on the party opposing summary judgment.  Id.

An employee's subjective belief that she was the victim of discrimination is insufficient to create an inference of discriminatory intent.  Lawrence v. Univ. of Tex. Med. Branch at Galveston, 163 F.3d 309, 313 (5th Cir. 1999).  Similarly, unsubstantiated assertions will not propel a nonmovant beyond summary adjudication.  Ragas, 136 F.3d at 458.  The court will grant summary judgment for the employer if the evidence, taken as a whole, would not allow a jury to infer that the reason for the adverse employment action, at least in part, was discriminatory.

11

See Bennett v. Total Minatome Corp., 138 F.3d 1053, 1060 (5th Cir. 1998).

### III. Analysis

Defendant seeks dismissal of Plaintiff's Title VII claims of discrimination and retaliation.

**A.   Title VII Standards**

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a). In an employment discrimination case, a plaintiff may prove a claim either through direct or circumstantial evidence.  Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000).  In the absence of direct evidence, courts analyze discrimination claims under the burden-shifting approach first articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and recently modified in Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003), and Rachid v. Jack In The Box, Inc., 376 F.3d 305 (5th Cir. 2004).

Under the "modified McDonnell Douglas approach," a plaintiff may trigger a presumption of discrimination by establishing a prima facie case.  Rachid, 376 F.3d at 312.  Once a plaintiff has established a prima facie case, the burden shifts to the defendant to proffer legitimate, non-discriminatory reasons for its actions. Id.  If the defendant satisfies this burden, then the presumption

of discrimination dissolves. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43 (2000); Price v. Fed. Express Corp., 283 F.3d 715, 720 (5th Cir. 2002).

The plaintiff must then offer evidence to create an issue of fact "either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motives alternative)." Rachid, 376 F.3d at 312 (internal quotation and alteration marks omitted); Keelan v. Majesco Software, Inc., 407 F.3d 332, 341 (5th Cir. 2005) (analyzing Title VII claim under the modified approach). If the plaintiff shows that the illegal discrimination was a motivating factor, the defendant must respond with evidence that the same employment decision would have been made regardless of discriminatory animus. Rachid, 376 F.3d at 312.

**B.  Discrimination Claim**

To establish a prima facie case of discrimination, the plaintiff must show that she: 1) is a member of a protected class; 2) was qualified for her position; 3) suffered an adverse employment action; and 4) was replaced by someone who is not a member of the protected class to which the plaintiff belongs or was treated less favorably than similarly situated employees of a different race. See Okoye v. Univ. of Tex. Houston Health Sci.

13

Ctr., 245 F.3d 507, 512-13 (5th Cir. 2001)(addressing race discrimination claim).  To succeed on a claim based on disparate treatment, the fourth element requires proof that the plaintiff was treated differently than a similarly situated employee, who is outside of her protected class, in nearly identical circumstances.  Bryant v. Compass Group USA Inc., 413 F.3d 471, 478 (5th Cir. 2005), cert. denied, ___ U.S. ___, 126 S. Ct. 1027 (2006); see also Okoye, 245 F.3d at 514; Wyvill v. United Cos. Life Ins. Co., 212 F.3d 296, 304 (5th Cir. 2000).

Defendant challenges Plaintiff's evidence in support of the third element of Plaintiff's prima facie case,[58] arguing Plaintiff failed to establish that she suffered an adverse employment action. Plaintiff contends, in response, that the transfer from the Field Unit to the Court Unit amounted to a demotion and was, therefore, an adverse employment action.[59]  Plaintiff's brief describes the new position as "more subservient" and as "a lesser post."

Plaintiff's argument fails for at least two reasons.  Most

---

[58] Defendant also contends that the actions taken against Plaintiff did not amount to "disparate treatment," but fails to develop this argument. Although Plaintiff's allegations conclusively accuse Defendant of disparate treatment, Plaintiff points to no evidence that compares her treatment to the treatment of nearly identical, similarly situated individuals outside of her protected class.  See Bryant, 413 F.3d at 478.  In her response, Plaintiff also contends that she was replaced by someone outside the protected class, but offers no evidence to support that allegation.

[59] Plaintiff also complains the Defendant placed her on a PIP, but wisely does not contend that placement on a PIP is an adverse employment action. See Hernandez v. Crawford Bldg. Material Co., 321 F.3d 528, 531-32 & n.2 (5th Cir. 2003)(listing actions that are and are not considered ultimate employment actions).

notably, Plaintiff did not file her Charge of Discrimination until March 3, 2005, considerably more than three hundred days after her transfer in January 2004.  Therefore, Plaintiff failed timely to exhaust her administrative remedies with regard to her transfer and cannot pursue the claim in this court.  See 42 U.S.C. § 2000e-5(e).

Even if the charge had been filed within the period of limitations, Plaintiff failed to cite the court to any testimony or other evidence to support her contention that her position at the Court Unit was a demotion.[60]  The testimony of Plaintiff that is in the record provides no specifics about her experience in the Court Unit whatsoever.  Plaintiff stated only that she would have preferred the Psychology Unit.  The evidence submitted by Defendant indicates that Plaintiff retained her job title and salary upon transfer to the Court Unit.  Meade considered the move to be a lateral transfer.[61]  Absent any contravening evidence, Plaintiff's disparate treatment claim cannot survive summary judgment.

For the sake of completeness, the court continues with the modified McDonnell Douglas analysis.  Defendant submitted evidence

---

[60]   The Fifth Circuit has held that an involuntary job transfer may qualify as an adverse employment action if the transfer makes the job "objectively worse."  Hunt v. Rapides Healthcare Sys, LLC, 277 F.3d 757, 770 (5th Cir. 2001)(addressing a First Amendment retaliation claim).  A plaintiff's subjective preference is irrelevant in this analysis.  Cf. Burger v. Cent. Apartment Mgmt., Inc., 168 F.3d 875, 879 (5th Cir. 1999)(stating that an employee's desire to for a shorter commute would not affect whether the transfer was a lateral one).  Rather, the adversity of the action is judged on an objective standard.  Pegram v. Honeywell, Inc., 361 F.3d 272, 283 (5th Cir. 2004).

[61]   Defendant's Reply, Docket Entry No. 28, Ex. A, Affidavit of Michael Meade.

that it transferred Plaintiff to the Court Unit upon her demand for immediate transfer.  According to the testimony, Plaintiff chose immediate transfer to an open position in the Court Unit over waiting for approval of the new position in the Psychology Unit.  Plaintiff's request and acquiescence provide a legitimate reason that justifies Defendant's action.

The record is completely devoid of any evidence that even remotely hints at racial discrimination.  Plaintiff points to no actions or statements by Defendant that were infused with race-based animus.  Nor does Plaintiff present any evidence of a nonblack comparator who was not transferred under nearly identical circumstances.  Without any evidence of discrimination based on race, Plaintiff cannot demonstrate that either defendant's reason for her transfer was not true or defendant's reason, albeit true, was accompanied by an illegal motivation.

In sum, Plaintiff's discrimination claim fails at all three stages of the McDonnell Douglas analysis.

**C.  Retaliation**

In order to establish a prima facie case for unlawful retaliation under Title VII Plaintiff must prove that: (1) she engaged in a protected activity; (2) she experienced an adverse employment action; and (3) a causal link existed between the protected activity and the adverse employment action.  Harvill v. Westward Commc'ns, L.L.C., 433 F.3d 428, 439 (5th Cir. 2005).

Protected activity includes complaining at work about acts of unlawful discrimination. Manning v. Chevron Chem. Co., LLC, 332 F.3d 874, 883 (5th Cir. 2003); see also 42 U.S.C. § 2000e-3(a).[62]

Defendant contends that Plaintiff is unable to satisfy any of the three elements of a retaliation claim. Plaintiff argues that she "filed at least three internal grievances alleging mistreatment by her superior."[63] Then, in December 2004, she received another PIP. According to Plaintiff, in January 2005, Defendant constructively discharged her. Plaintiff contends that evidence in the record is sufficient to establish a prima facie case.

Because the evidence does not comport with her allegations, Plaintiff's retaliation claim also fails. With regard to the protected activity requirement, the evidence is clear that Plaintiff complained *about* her performance appraisals and her alleged maltreatment by Slater, but nothing in evidence reflects that she complained *about* discriminatory treatment based on her race. Plaintiff has not produced any evidence in support of the first element of a retaliation claim.

The second element requires evidence of an adverse employment action. Apparently, Plaintiff relies on her allegation of

---

[62] The statute prohibits discrimination against an employee "because he has opposed any practice made an unlawful employment practice" by Title VII "or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a).

[63] Plaintiff's Response, Docket Entry No. 27, p. 8 (unnumbered).

constructive discharge to satisfy this element.[64]

When a plaintiff resigns, she may rely on evidence that she was forced to resign because the employer deliberately made the conditions so intolerable. Boze v. Branstetter, 912 F.2d 801, 804 (5th Cir. 1990). The resignation must be reasonable under the circumstances. Barrow v. New Orleans S.S. Ass'n, 10 F.3d 292, 297 (5th Cir. 1994).[65] Constructive discharge requires proof of "greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." Landgraf v. USI Film Prods., 968 F.2d 427, 430 (5th Cir. 1992), aff'd, 511 U.S. 244 (1994); see also Brown v. Kinney Shoe Corp., 237 F.3d 556, 566 (5th Cir. 2001).

Plaintiff has failed to produce any evidence suggesting that her transfer was a demotion, much less that the conditions of her employment in the Court Unit were reasonably intolerable under the circumstances. Plaintiff's allegations that everyone in the department was upset with her, was unkind to her, and ignored her, to the extent these allegations are supported by the evidence at all, do not rise to the level of intolerable conditions that would

---

[64] Plaintiff also complains about being placed on a PIP in December 2004, but, as previously noted, that does not amount to an adverse employment action. See Hernandez, 321 F.3d at 531-32 & n.2.

[65] The Barrow case gives a nonexclusive list of seven employer actions that may be considered evidence of constructive discharge: (1) demotion; (2) salary reduction; (3) reduction in responsibilities; (4) reassignment to menial work; (5) reassignment to a younger supervisor; (6) harassment calculated to encourage resignation; and (7) early retirement. 10 F.3d at 297. Significantly, none of these factors has any arguable application to this case.

force a reasonable person to resign.  Absent any detail and supporting evidence, these allegations are essentially meaningless.

Finally, Plaintiff is unable to raise a fact question on causation.  The evidence indicates that all of Plaintiff's internal grievances were filed prior to her transfer to the Court Unit. Plaintiff was not placed on another PIP for approximately eleven months after her transfer.  Plaintiff does not allege that she filed any grievance during that time.  She took FMLA leave immediately after receiving her December 2004 performance evaluation and PIP and resigned upon her return from medical leave in February 2005.  Nothing, not even a relatively short period of time, connects her internal complaints with her resignation.

Plaintiff's failure to establish any of the prima facie elements of a retaliation claim prevents the court from completing the McDonnell Douglas analysis.  Plaintiff has failed wholly in her attempt to raise an issue of material fact on retaliation.  The claim must be dismissed.

## IV. Conclusion

Based on the foregoing, the court **GRANTS** Defendant's Motion for Summary Judgment.  The only remaining claim, on which Defendant did not move for summary judgment, is a state law claim for intentional infliction of emotional distress.  As the court's decision dismisses all of Plaintiff's federal causes of action, the court declines to exercise supplemental jurisdiction over the

remaining claim and dismisses Plaintiff's intentional infliction of emotional distress claim without prejudice. See 28 U.S.C. § 1367(c)(3)(giving district courts the power to decline supplemental jurisdiction over state law claims when "the district court has dismissed all claims over which it has original jurisdiction"); Moore v. Willis Indep. Sch. Dist., 233 F.3d 871, 876 (5th Cir. 2000)(indicating that, upon dismissal of all federal claims, the court should dismiss the supplemental state law claims without prejudice).

**SIGNED** in Houston, Texas, this 7th day of November, 2006.

Nancy K. Johnson
United States Magistrate Judge